## FARMERS & TRADERS BANK v. KIMBALL MILLING CO.

1. Where the president and cashier of a bank fraudulently divert the funds and assets of the bank, and invest them in mill machinery, fixtures, real estate, and appurtenances of a corporation of which they were at the time the president and secretary, such corporation holds such property impressed with a trust in favor of the bank to the extent of the bank funds and assets that can be traced into such corporate property, unless such corporation can show that it acquired such funds and assets in good faith, and for a valuable consideration.

2. The fact that such bank officers were the general officers of the milling company from its organization, and during the time the bank funds, property, and assets were being diverted and invested in the milling company's property by them, as well as officers of the bank, constitutes presumptive knowledge on the part of the milling company of the fraudulent acts of such bank officers.

3. It is not necessary, in cases of constructive or involuntary trust, as de-

fined by Section 3920, Comp. Laws, that the bank should show that its funds had paid for any definite or aliquot part of the milling company's property; but the bank is entitled to have impressed and charged upon the milling company's property a trust to the extent of its funds and assets, with the profits thereof, which it can trace into said milling company's property, with notice.

4. Where the officers of the bank have received stock of a corporation in payment for the funds and property fraudulently obtained from the bank, and invested in the corporate property, the bank is not compelled to follow the stock in the hands of the officers of the bank so receiving it, but may, at its option, follow the property so purchased or created with such fraudulently misappropriated bank funds and assets, with the profits thereof, or their proper proportion, where it is alleged, as in the present case, that substantially all the property of the corporation has been acquired or created with the misappropriated bank funds and assets, and the profits thereof, under circumstances showing the corporation received such property with notice of all the facts, and where it is alleged that all the stock is held by such bank officers, or by parties having full notice of all the facts.

5. It is not indispensible, under Section 3920 of our statute, that a trust or any fiduciary relation exist between the wrong-doer and beneficiary in order to raise a trust in the property, except for the violation of a trust. if the funds or assets have been obtained by fraud or any other wrongful act, a trust arises in favor of the beneficiary in the property, or the property into which such funds have been converted or transmuted.

6. A corporation receiving the misappropriated funds and assets of a bank through its president and cashier, who were also the officers of the corporation, with notice, can properly be required to account for such funds and assets, and the profits thereof.

7. An allegation in the complaint that about $10,000 of the bank funds and assets were diverted, and converted by its president and cashier into the property of a milling corporation, of which such bank officers were also the principal officers, with the further allegation that the property of such milling corporation was substantially created with and that it commenced its business on the funds and assets of the bank, is sufficient, on general demurrer, to impress a trust on such corporate property in favor of the bank, when such funds and assets had been acquired by the milling corporation, with notice.

(Syllabus by the court. Argued April 14, 1890. Opinion filed Dec. 18, 1890.)

Appeal from circuit court, Brule county, Hon. D. HANEY, Judge.

The material facts are stated in the opinion.

*W. A. Porter,* for appellant.

Plaintiff seeks to recover by establishing an involuntary trust for its benefit in the property of defendant. The com-

plaint does not state facts sufficient to establish such a trust. §§ 3920, 3933, Comp. Laws; 2 Wait's Prac. 290, 392; Bliss on Code Plead. §§ 202, 203. The complaint is insufficient in that it fails to identify the trust fund or property, and fails to show that plaintiff paid any specific sum for any distinct interest in or aliquot part of the property. Perry on Trusts, §§ 128, 132; Neeley v. Roode, 19 N. W. 920; McGowen v. McGowen, 14 Gray, 119; Sayer v. Townsend, 15 Wend. 647; Reynolds v. Morris, 17 O. St. 510; Shaffer v. Felty, 4 S. E. 276; Crockett v. Lee, 7 Wheat. 532; Jackston v. Ashley, 11 Pet. 229; Creed v. Bank, 1 O. St. 1; Gaphill v. Isebell, 19 Am, Dec. 675. The alleged acts of embezzlement of Foote and Gates of the property of plaintiff were not the acts of this defendant. §§ 2972, 2926, Comp Laws; Nichols v. Bruers, 5 Dak. 28; Angell & Ames on Corp., § 277. The complaint fails to allege that the defendant took the property or assets of the plaintiff with notice of the fraudulent acts of Foot and Gates. Barnes v. O'Donnell, 18 Pac. 429; § 2920, Comp. Laws. If the complaint states a cause of action at all it is against Foote and Gates, and not against this defendant.

*G. L. McKay* and *W. S. Farmer*, for respondent.

Foot, as cashier of the plaintiff bank, was a trustee, and the funds and assets of the plaintiff in his hands were a trust fund. Abbott v. Rubber Co., 33 Barb. 178; Bank v. Daniels, 4 Denio. 297; §1297, Comp. Laws. When with this trust fund he purchased the milling machinery in question his purchases inured to the benefit of the plaintiff. §§ 1299, 1297, Civil Code; Colburn v. Marton, 5 Abb. Pr. U. S. 135; Ackerman v. Ematt, 4 Barb. 649; Voorhees v. Church, 8 Barb. 135; Torrey v. Bank, 9 Paige 6 49; Corse v. Leggett, 25 Barb. 389. The subsequent sale by Foot of this property to the defendant did not extinguish plaintiff's title and the defendant held the property in trust. § 1300, Civil Code; Romig v. West Point B. & C. Ass'n, 11 N. W. 884. The money received by Foote from subscription to aid in constructing the mill was also received by him in a fiduciary capacity for the benefit of plaintiff and when subsequently turned over

to defendant was still impressed with the trust.    §§ 1297, 1143, Civil Code; Meeker v. Iron Co. 17 Fed. 49.

Foote at the same time being an officer and agent of the defendant, the defendant obtained the money from which the mill property was created by fraud, and thereby acquired no title thereto and the same is impressed with a trust for the benefit of the plaintiff.    Amer. v. Hightower, 11 Pac. 697; Lee v. Simmons, 27 N. W. 174; Sleeper v. Davis, 4 At. 201; Russell v. Allen, 10 Paige 249; Bank v. Levy, 3 Baige 606; McLeod v. Evans, 28 N. W. 173; VanAlen v. Bank, 52 N. Y. 1; People v. Bank, 96 N. Y. 33; Cragie v. Hadley, 1 N. E. 537; Bank v. Stillwater Gas Co., 30 N. W. 440; Bank v. Ins- Co., 14 Otto. 54; Freeworth v. Gilbert, 63 Cal. 404; Bruce v. Rooney, 13 Ill. 67; Peake v. Ellicotte, 1 Pac. 502.    Foote was the secretary of defendant from its inception, and defendant is deemed to have notice of the fraud and embezzlement alleged in the complaint.    Davis v. Smith, 7 N. W. 731; Thompson v. Merrill, 10 N. W. 796; Brandup v. Ins. Co., 7 N. W. 735; Shafer v. Ins. Co., 10 N. W. 381.

Plaintiff is entitled to an accounting against the defendant.    Rath v. Vanderlyn, 7 N. W. 196; Perrin v. Lepper, 40 N. W. 859; Waldon v. Skinner, 11 Otto. 557; Frith v. Cartland, 2 Hem & M. 417; § 1306 Civil Code.

CORSON, P. J.    This is an action brought by plaintiff to enforce a trust against the defendant, for an accounting, and for an injunction.    A general demurrer was interposed to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.    The demurrer was overruled, and defendant appeals from the order.    The complaint alleges, in substance, that plaintiff and defendant are corporations; that on the incorporation and organization of the plaintiff, in August, 1884, one Gates was made its president, and one Foote its cashier, and that said Gates and Foote were entrusted with the custody and control of plaintiff's business; that upon the incorporation and organization of the defendant, in November, 1886, said Gates was elected president, and the said Foote secretary; that, immediately upon his entry upon his employment as cash-

ier of the plaintiff's bank, said Foote began to and did misappropriate and convert the money, assets, and funds of the bank to his own use and benefit, and that with the money, assets, and funds of the said bank, so misappropriated and converted, he purchased certain mill machinery and fixtures, which, upon the organization of the said milling company, he subscribed and contributed to and merged into the property and assets of the said milling company as representing and in payment of a part of its capital stock; that the citizens of the city of Kimball raised and paid over to said Foote about $1,250 in money, notes, and assets, as a bonus to assist in the construction of a mill, and that said Foote obtained and received said bonus by reason of his possession of said mill machinery and fixtures so purchased with the money and assets so diverted and fraudulently obtained by him from plaintiff's said bank; that, upon the incorporation and organization of the said milling company, said Gates and Foote, still being officers of said bank and of said milling company, began and continued to divert and misappropriate the funds, assets, and credit of said bank to the use and benefit of said milling company in the construction of its mill, the purchase of mill machinery, fixtures, real estate, and appurtenances, and that the amount so wrongfully obtained from said bank and diverted to the use and benefit of said milling company was about $10,000; that while such officers of said bank and said milling company they used and traded upon the credit and responsibility of said bank to aid the said milling company in carrying on its milling business, and in obtaining its mill machinery, fixtures, real estate, and appurtenances, etc., and that they neglected the business of said bank, and gave their time and attention to the business of said milling company; that said milling company began its business without other capital than that so fraudulently obtained from said bank by said Gates and Foote, except about $2,500 contributed by one Hayden, and that the value of the milling company's property is about $15,000, all of which was purchased and created by the money, funds, and assets of said bank, so fraudulently misappropriated and diverted by said Gates and Foote; that

said Gates and Foote hold the stock of said milling company, except that held by parties to whom it has been transferred, with full knowedge of all the facts, and that said milling company has been a profitable and successful institution, and has done a large and lucrative business since its organization.

Before proceeding to examine the complaint and the objections made to it by counsel for appellant, it may be proper to consider the different classes of trusts, and the provisions of our statutes relating to them, as well as the general principles of equity governing cases of this character. Trusts, under Section 3911, Comp. Laws, are divided into voluntary and in voluntary, and by Section 3913 an involuntary trust is declared to be created by operation of law. It is further defined in Sections 3919 and 3920, which are as follows: "3919. One who wrongfully detains a thing is an involuntary trustee thereof for the benefit of the owner. 3920. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it." And by Section 3933 it is provided: "Every one to whom property is transferred in violation of a trust holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration." These sections are evidently intended to include that class of trusts known, in equity jurisprudence, as "constructive trusts," as a resulting trust is defined in Section 2796, and the effect of a transfer of the trust property under that section is provided for in Section 2797. These sections are as follows: "2796. When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made. 2797. No implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property for value, and without notice of the trust."

In a resulting trust intention is an essential element, although that intention is never expressed by words of direct

creation. The law, however, presumes the intent from the facts and circumstances accompanying the transaction, and the payment of the consideration for the whole or a definite or aliquot part of the property sought to be impressed with the trust. There is usually no element of fraud in a resulting or implied trust, but the conveyance is made or taken with the knowledge and consent, express or implied, of the person who has paid the consideration. When one, therefore, takes a conveyance secretly, contrary to the wishes of, and in violation of his duty to, the beneficiary, and in fraud of his rights, the trust is not a resulting but a constructive or involuntary trust. In resulting trusts, the principle that the party seeking to enforce the trust must show that he is entitled to a definite or aliquot part of the property applies, and is well illustrated in the cases cited by appellant's counsel. White v. Carpenter, 2 Paige, 217; Sayre v. Townsend, 15 Wend. 650; Olcott v. Bynum, 17 Wall. 44. See, also, Dyer v. Dyer, 2 Cox 92; 1 Lead. Cas. Eq. 314; Crop v. Norton, 2 Atk. 74; Pom. Eq. Jur. § 1038. But as it is quite apparent that the complaint in this case was drawn by the pleader, not upon the theory of an implied or resulting trust, but upon that of a constructive trust or involuntary trust as defined in Section 3920, it will not be necessary to refer further to this class of trusts.

Involuntary or constructive trusts embrace a much larger class of cases, and include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, when there is no intention of the parties to create a trust relation, and contrary to the intention of the one holding the legal title. This class of trusts may be usually referred to fraud, either actual or constructive, as an essential element. This extension of the fundamental principles of trusts enables courts of equity to wield a remedial power of great efficacy in protecting the rights of property. They can follow the real owner's property, and preserve his real ownership, into whatever form it may be changed or transmuted, even into the hands of third parties, so long as the property or fund into which it has been converted can be traced,

until it goes into the hands of an innocent purchaser for value, and without notice; and the rule applies to either real or personal property. And these principles of the courts of equity seem to have been embodied in Sections 3919, 3920, and 3933, above cited. Fox v. Mackreth, 2 Cox, 320, 1 Lead. Cas. Eq. 188; Swinburne v. Swinburne, 28 N. Y. 568; Newton v. Porter, 69 N. Y. 133; Van Allen v. Bank, 52 N. Y. 1; People v. Bank, 96 N. Y. 33; Bank v. King, 57 Pa. St. 202; Third National Bank v. Stillwater Gas Co., 36 Minn. 75, 30 N. W. Rep. 440; Peak v. Ellicott, 30 Kan. 156, 1 Pac. Rep. 499; McLeod v. Evans, 28 N. W. Rep. 173; National Bank v. Ins. Co., 104 U. S. 54; Pennell v. Deffell, 4 De Gex. M. & G.. 372; McLeod v. Evans, 66 Wis. 401, 28 N. W. Rep. 173, 214; Pom. Eq. Jur. § 1044; *In re* Hallett's Estate, 13 Ch. Div. 696. This doctrine has been usually applied to cases of conventional trustees or to persons holding some fiduciary position; but, in order that this species of trust may arise, it is not indispensable that a trust relation exists or even any fiduciary relation between the wrong-doer and the benificiary, and it would seem, under the provisions of our statute, no such distinction exists, except in case of the violation of a trust, specified in the section. The language of Section 3920 is that "one who gains a thing by fraud * * * or other wrongful act * * * is an involuntary trustee of one who would otherwise have had it." The omission from this section of any reference to a conventional trustee, except in one class of cases, or one holding some fiduciary position, is important as showing the intention of the law-makers to eliminate from the law in this state the distinction usually made by courts of equity between wrong doers who do not and persons who do hold a trust or fiduciary position. It would seem, then, that, under the provisions of our statute we are now considering, a person who acquires property by fraud or any other wrongful act holds the property as the trustee for the rightful owner, and that such owner can follow not only the identical property so fraudulently or wrongfully obtained, but any property into which such property has been converted or transmuted, so long as he can iden-

tify the same as acquired with the fraudulently or wrongfully obtained funds; and if the property so obtained has been used with funds of his own by the wrong doer in the purchase of other property, such property is impressed and chargable with a trust in favor of the beneficiary to the extent of the fund traceable into the property. And a person into whose hands such property may come in its original or changed condition, charged with notice, though he may not be guilty of any fraud or wrong, nevertheless holds the property subject to the trust, precisely as the wrong doer would hold it. In other words, under Section 3920, all persons who have acquired property, as provided by that section, without regard to whether or not they hold any trust or fiduciary position, are chargeable as trustees, and persons not *bona fide* purchasers, into whose hands or possession the property may come, also hold the property as trustee of the beneficiary, so long as the funds belonging to the beneficiary can be identified, into whatever form it has been transmuted or changed.

The doctrine of courts of equity applicable to trust property in its original or transmuted form is clearly stated *In re* Hallett's Estate, *supra*, a late and leading English case, substantially as follows: That the modern doctrine of equity as regards property disposed of by persons in a fiduciary position is that, whether the disposition be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, provided only he can identify them. If they cannot be identified by reason of the trust money being mingled with that of the trustee, then the *cestui que trust* is entitled to a charge upon the new investment to the extent of the trust money traceable into it; that there is no distinction between an express trustee, or an agent, bailee, or collector of rents, or anybody else in a fiduciary position, and that there is no difference between investments in the purchase of lands or chattels or bonds or loans or money deposited in a bank account. The master of the rolls in that case adopts the principle of Lord ELLENBOROUGH'S statement in Taylor v. Plumer, 3 Maule & S. 562, in which he says: "It makes no difference in reason or law into

what other form different from the original the change may
have been made, whether it be into that of promissory notes
for the security of money which was produced by a sale of the
goods of the principal, as in Scott v. Surman, Willes, 400, or
into other merchandise, as in Whitecomb v. Jacob, 1 Salk. 161;
for the product or substitute for the original thing still follows
the nature of the thing itself as long as it can be ascertained to
be such, and the right only ceases when the means of ascer-
tainment fail."    National Bank v. Insurance Co., *supra*.    And
in Pennell v. Deffell, *supra*, Lord Justice TURNER said:    "It is,
I apprehend, an undoubted principle of this court that as be-
tween *cestui que trust* and trustee, and all parties claiming un-
der the trustee otherwise than by purchase for valuable consid-
eration without notice, all property belonging to a trust, how-
ever much it may be changed or altered in its nature or
character, and all the fruits of such property, whether in its
original or altered state, continue to be subject to or affected
by the trust."

    With these preliminary observations, we proceed to exam-
ine the complaint in this action.    It is quite apparent from an
inspection of it, as before stated, that it was drawn, or intended
to be drawn, upon the theory that the trust sought to be im-
pressed upon the property held by the defendant is one coming
under the head of a constructive or involuntary trust, to be en-
forced by a court of equity, not in accordance with any pre-
sumed intention of the parties, but to subserve the ends of jus-
tice by "subjecting the substituted property to the purposes of
indemnity and recompense" to the plaintiff for its moneys al-
leged to have been embezzled and fraudulently used in the pur-
chase and creation of the milling property.    It appears from
the complaint that Foote, while cashier of the bank, and in-
trusted, in connection with Gates, president, with its manage-
ment, fraudulently diverted and misapplied the funds of the
bank to his own use and benefit, and with the funds so fraud-
ulently obtained from the bank purchased certain mill machinery
and fixtures which he subsequently, on the organization of the
mill company, of which he was made secretary, of which he

was made secretary at the time of its organization, contributed, as a part of the capital stock of said mill company. Such machinery and fixtures, though purchased in the name of said Foote, but with the funds fraudulently obtained from the bank, was impressed with a trust in favor of the bank in his hands, and was, in equity, the property of the bank. It is insisted by appellant's counsel that this allegation is defective in not stating the amount so diverted by Foote, and expended in the purchase of the mill machinery and fixtures. Perhaps, considered as an independent allegation, the objection would be good; but it must be considered in connection with the other allegations of the complaint, and was inserted for the purpose, doubtless, of showing that the $1,250 donated by the citizens of Kimball belonged to the bank, as it is subsequently alleged that, by means of the apparent ownership and possession of said mill machinery and fixtures, said Foote obtained a bonus from the citizens of Kimball of about $1,250 in notes, money, and assets, which was also contributed to the capital stock of the mill company. As Foote held the mill machinery and fixtures as trustee of the bank, all gains or profits arising from the apparent ownership and possession of the mill machinery and fixtures, so in equity the property of the bank, inured to the benefit of the bank, and should be impressed with a like trust in favor of the bank. Colburn v. Morton, 5 Abb. Pr. (N. S.) 308; Ackerman v. Emott, 4 Barb. 649.

It is further alleged that upon the organization of the mill company, of which Gates was made president, and Foote secretary, they fraudulently diverted the funds of said bank to the use and benefit of said mill company to the extent of about $10,000, and that the mill company began its business without other capital than that wrongfully and fraudulently obtained from the bank, except about $2,500 contributed by one Hayden, It is further alleged that the value of the mill property is about $15,000, all of which has been created by plaintiff's said money, assets, and credit so fraudulently diverted and misappropriated by said Gates and Foote, except the $2,500 contributed by Hayden. It is clear, then, from these allegations of

the complaint, that this entire milling property was created with the funds, assets, and credit of the bank so fraudulently diverted and misappropriated by said Foote and Gates, except the $2,500 contributed by Hayden.    Assuming this to be true, which the demurrer admits, the property in the name and possession of the milling company should be impressed with a trust in favor of the bank to the extent of the funds and assets of the bank so fraudulently diverted and misappropriated by said Foote and Gates that can be traced into the mill property, with the profits arising therefrom, unless the milling company can show that it acquired said property in good faith, for a valuable consideration, and without notice of the fraudulent acts of said Foote and Gates, in obtaining said bank funds. If Foote and Gates had purchased and were still holding the mill property in their own name, no one would question, we apprehend, the right of the bank to hold them as trustees, or the right of the bank to have impressed upon the property a trust in its favor to the extent of its funds and assets fraudulently diverted and invested in the property.    The mill company being chargeable with notice is in no better position than Foote and Gates would be if they held the property in their own name.

Appellant contends that the plaintiff should have alleged that the milling company had obtained the property or funds and assets of the bank with notice of the fraudulent acts of Foote and Gates.    There are two answers to this proposition, and they are:    *First,* That it is alleged that Foote and Gates were general officers of the milling company from its organization, and that they gave their time and attention to the business of the milling company; therefore, there was no time when they could have transferred property or assets to the milling company when they were not officers of said company. No conveyance of property can be made to an incorporated company until it is incorporated, and therefore the knowledge of Foote and Gates was, presumptively at least, the knowlege of the company.    *Second.*    It was not incumbent upon the plaintiff to allege notice, as want of notice, the payment of a valua-

ble consideration, and good faith are affirmative matters to be pleaded and proved by the defendant. 1 Daniell. Ch. Pr. pp. 702, 703; Boone v. Chiles, 10 Pet. 177; Vattier v. Hinde, 7 Pet. 252; Tompkins v. Anthon, 4 Sandf. Ch. 97; Balcom v. Insurance & T. Co., 11 Paige 454; Baynard v. Norris, 5 Gill, 468; Pom. Eq. Jur. § 785.

It is also contended by appellant that no sufficient facts are stated in the complaint to require defendant to account to the plaintiff. We think otherwise. If defendant has this property, purchased and created with funds and assets so wrongfully obtained from the bank by Foote and Gates, and so holds it that it is chargeable as a trustee, it should, undoubtedly, be compelled to account to the bank not only for the property it has received, impressed with a trust upon it, but for all the profits received therefrom. Again, if the milling property, standing or held in the name of the company, in equity belongs to the bank, subject to the rights of Hayden for his proportionate amount advanced by him, an accounting will not only be proper, but perhaps necessary for the protection of Hayden's interest; and if it should appear that defendant has contributed any part of the funds creating said milling property, such an accounting might be necessary for its own protection.

It is also contended that the plaintiff, by its own showing, has no claim against the defendant because it has affirmatively alleged that Gates and Foote have received in payment for the funds and property advanced to the defendant stock of the company, and therefore plaintiff should follow the stock so received by them. This is a question that has caused us some embarrassment, but we are of the opinion that one whose property, money, or assets has been fraudulently obtained and invested by the parties so obtaining it in the property of a corporation, and stock of the company received therefor, ought not to be compelled to follow the stock, but should have the right, at his option, to pursue the property itself, when, as in this case, it is alleged that substantially the entire property has been created with, and the business of the company almost entirely conducted on, the moneys, assets, and credits of the bank, and

when it is alleged, as in this case, that the entire capital stock of the corporation is held by the original wrong doers, or those who have purchased it with full notice of all the facts.

It is contended that the plaintiff has not stated definitely the amount of its money, funds, and assets that have been fraudulently diverted by Gates and Foote, and invested in the milling company's property. The plaintiff in its complaint states, perhaps as definitely as it is able to do, the amount misappropriated and diverted by Gates and Foote of the funds and assets of the bank, when it alleges that the amount so diverted and appropriated to the use and benefit of the defendant is about $10,000, with the other allegation of the bonus of $1,250. In addition to these is the allegation that the entire milling property was created by the fraudulently misappropriated and diverted funds, assets, and credit of the bank, except the sum of $2,500. We are of the opinion that the complaint is sufficient, in this respect, on general demurrer. We have not attempted to follow the order of the able briefs of counsel, but have, we believe, considered all the points raised. The order overruling the demurrer is affirmed. All the judges concurring.