HEDGES, et al., Respondents v. HEDGES, et al., Appellants

(209 N.W.2d 660)

(File No. 11097. Opinion filed July 30, 1973)

Peter J. Pagones, Morris Myers, Aberdeen, on the brief, for defendants-appellants.

Lloyd C. Richardson, Jr., of **Richardson, Groseclose & Kornmann**, Aberdeen, for plaintiffs-respondents.

R. D. Miller, Aberdeen, for plaintiff, First National Bank.

Charles E. Gorsuch, Aberdeen, for defendant, Harold W. Kolb.

RENTTO,* Associate Judge.

The plaintiff W. B. Hedges commenced this action on December 31, 1969 against two of his sons to cancel the deed by which he conveyed to them his Brown County farm on April 29, 1968. He claimed that such conveyance was induced by their false and fraudulent representations. Some of his other children joined with him in bringing the action.

During the pendency of the litigation W. B. Hedges was adjudged incompetent and a guardian appointed for him. By amendment his guardian was made a party to the action and the plaintiffs enlarged their prayer for relief by requesting alternatively that a constructive trust be impressed against the defendant sons. On November 25, 1969 these sons contracted to sell the property to one Harold W. Kolb and received from him a substantial down payment. Kolb was made a party during the trial. From the judgment entered on November 4, 1971 declaring that the defendant sons held the farm their father conveyed to them as constructive trustees for all of his ten living children, these sons appeal.

Apparently the farm involved had been the home of the Hedges family for a long time, but in more recent years only the father and mother lived on it. They did not farm much of the land as 306 of its 320 acres were under the soil bank program. The title was in their names as joint tenants. Mrs. Hedges died in 1964 after which her widower continued to live there. While he promptly instituted proceedings to terminate the joint tenancy,

---

* Retired Supreme Court Judge acting by appointment pursuant to SDCL 16-8-13.

they were not concluded until February 1968 because of his concern about attorney's fees and the other costs involved. This experience gave rise to a desire on his part to arrange his affairs in a manner that would make unnecessary any court proceedings concerning his property upon his death.

He was then 83 years of age. He had had very little formal education or experience in the business affairs of life. While his wife was alive he had relied on her business judgment. After her death he relied on his son Denver, and to a lesser extent his son Roland, for advice in his business affairs. Because of his failing physical and mental condition his lawyer found it necessary to discuss his business affairs with these defendant sons in whom the father seemed to repose much trust and confidence. This lawyer advised the father against selling his farm or placing the title to it in trust to avoid probate or administration proceedings.

Nevertheless the defendant sons and their father continued to have numerous conferences concerning what he should do with his farm to avoid estate proceedings. His principal concern was that his eight other living children should share equally with each of the defendant sons in his estate, and that he be allowed to live out his life on the farm. Following these discussions they met several times with an attorney who had done legal work for Denver but not for his father. The other children were not consulted or informed as to what they and their father were discussing and planning as to his farm.

This attorney prepared the deed in question which conveyed the father's farm to the two defendant sons, without reserving to the father the right to occupy his home thereon. They each paid him $50 and executed a note whereby they promised to pay to each of the other eight children $4,000, without interest, at the rate of $200 per year over a period of 20 years. This figure of $32,000 was arrived at by valuing the farm at $40,000, and allowing to each defendant son a $4,000 share in it.

The note further provided that if by reason of drought, disaster, depression, fire, pestilence or any other condition which substantially reduces the income from the farm in any year in the

judgment of the defendant sons, they could defer the annual payments for that year an additional year, extending the note accordingly. The note was secured by a mortgage on the farm. The deed and mortgage were recorded but the note remained in the possession of the lawyer who prepared the instruments. Each of the other eight children received their $200 installments for 1968 and 1969.

In buying the farm in 1969 Kolb agreed to pay the defendant sons $48,000 for it with interest at 7% a year. The contract excluded 12 acres which comprised the farm home occupied by W. B. Hedges from the sale. This remained the property of these sons. Kolb paid them a down payment of $8,000 and the 1970 installment of $3,867. They were to receive $4,640 as the 1971 installment and after that annual installments of $2,000 plus interest on the unpaid balance at 7%. In 1969 they received a soil bank payment of $2,743.40. Why the father delayed bringing this action as he did is not clear, but it is inferable from the record that because of his deteriorating mental and physical condition he did not realize what he had done until mid-1969. This delay does not appear to have resulted in any prejudice to the defendant sons.

Obviously by the transaction which the father had with the defendant sons the father was not treating his ten living children equally. It allowed these sons to use the property of their sisters and brother for 20 years without payment of any interest. At 7% a year this amounts to $2,940.00 and at 8% to $3,360.00. Nor did the father have any legal right to live on the farm after he conveyed it to his sons. These facts the court found were never disclosed by the defendant sons to their father.

It further found the father was infirm to the point that he was in a stage of senility approaching incompetency and because of the trust and confidence he had in them he relied upon their advice concerning his property. It also found that the father did not understand the nature of the document he was signing and was influenced to do so by the defendant sons' misrepresentations and failure to disclose the facts surrounding the transaction; and that had he known the true situation he would not have executed the deed involved.

■ Appellants urge that there is insufficient evidence to support these findings. Under our present rule we may not set aside findings unless we deem them clearly erroneous. SDCL 15-6-52(a). They do not merit that characterization unless the reviewing court on the entire evidence "is left with a definite and firm conviction that a mistake has been committed". In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455. After carefully reviewing the record we are not left with the required conviction. Consequently the findings are binding on us.

■ The parent and child relationship of the grantor and grantees is not of itself sufficient to establish a confidential relationship for the purposes of a constructive trust. But when there is in addition the infirmity of the parent, his reliance on the advice of his sons with reference to his property, and the trust and confidence in them that this record reflects, theirs is a confidential relationship. Jaeger v. Sechser, 65 S.D. 38, 270 N.W. 531. Where one uses a confidential relationship to obtain an advantage which he cannot conscientiously retain, the court, to prevent abuse of confidence, will utilize the constructive trust concept to grant relief. Kelly v. Gram, 73 S.D. 11, 38 N.W.2d 460. It arises at the time of the wrongful acquisition. Johnson v. Graff, 71 S.D. 231, 23 N.W.2d 166.

■ The court also found that the trust which it was imposing was proved by evidence that was clear, satisfactory and convincing. This is the requirement of the general rule and also the rule of our cases. Brown v. Warner, 78 S.D. 647, 107 N.W.2d 1. Appellants suggest that the evidence in this case was not to this degree of persuasion. Giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses, as is our duty under SDCL 15-6-52(a), we are not persuaded that it is clearly erroneous.

This court has long favored the constructive trust concept to accomplish justice. In the early case of Farmers & Traders Bank v. Kimball Milling Co., 1 S.D. 388, 47 N.W. 402, Presiding Judge Corson writing for the court said that it was:

"raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, when

there is no intention of the parties to create a trust relation, and contrary to the intention of the one holding the legal title."

This is a basic general rule. 89 C.J.S. Trusts § 139; 54 Am.Jur., Trusts, § 218. Our more recent cases refer to this use of the constructive trust as being the remedy imposed to avoid unjust enrichment. In re Farmers State Bank of Amherst, 67 S.D. 51, 289 N.W. 75; In re Zech's Estate, 69 S.D. 51, 6 N.W.2d 432; Schwartzle v. Dale, 74 S.D. 467, 54 N.W.2d 361; and Johnson v. Burke, 75 S.D. 285, 63 N.W.2d 794. The court's conclusion that it was necessary to impose a constructive trust in this case to prevent unjust enrichment and effectuate justice has more than ample support in its findings.

■ In addition to decreeing that the appellants held the property in question as constructive trustees, the court by its judgment removed them as such and substituted a corporate trustee. It also adjusted the equities between the parties, including Kolb. In Seubert v. Seubert, 68 S.D. 195, 299 N.W. 873 this court held that the court of equity in decreeing a constructive trust is bound by no unyielding formula. Rather the equity of the transaction must shape the measure of relief. The judgment appealed from reflects a judicious adjustment of the equities of this situation. We do not understand the defendant sons to complain of the manner in which the court did this.

■ The next matter urged is that the plaintiffs did not rescind the instruments involved promptly or offer to restore everything of value received thereunder. Obviously this contention relates to that part of plaintiffs' request for relief which asked that the deed in question be cancelled. Such actions are required when a party is rescinding a contract. See SDCL 53-11-4 and 53-11-5. Because the court did not grant that relief the questions are not involved in this appeal. But if the matter of delay were presented, the plaintiffs would not be estopped by laches to claim their rights. See Schwartzle v. Dale, 74 S.D. 467, 54 N.W.2d 361. In their pleadings the plaintiffs offered to restore what they had received. Since the tender claimed was money, this was sufficient, if a tender was required. Main v. Professional & Business Men's Life Insurance Co., 80 S.D. 288, 122 N.W.2d 865.

■ Appellants' remaining contention grows out of their effort to have the attorney who drew the instruments involved, and a will for W. B. Hedges, testify concerning conversations had with him when they were being prepared. Objections to the questions put to him about such matters were sustained. SDCL 19-2-4 states:

> "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

Because Mr. Hedges testified at the trial of this matter it is claimed that he waived the privilege afforded him by the quoted statute. The basis for this claim is SDCL 19-2-6. That section states:

> "If a person offer himself as a witness he thereby waives any privilege he might otherwise claim, which would prevent the examination of his attorney, spiritual adviser, or healing practitioner on the same subject within the meaning of §§ 19-2-2 to 19-2-4, inclusive. If a person once waives such privilege, as to any particular communication, he cannot thereafter claim it."

The privilege of the statute does not cover all communications between attorney and client. To gain the protection of privilege one requirement is that the communication relate to matters as to which the client has sought the attorney's professional aid or advice. Jones on Evidence (Sixth Edition) § 21:9; Wigmore on Evidence (McNaughton Revision) § 2310.

■ When the objections were sustained appellants made no formal offers of proof from which the trial court could, or we can now, determine whether the matters inquired about were within or without the scope of the privilege statute. Nor does this appear from the questions themselves. Consequently the appeal does not present this matter. State v. Goff, 79 S.D. 138, 109 N.W.2d 256. An offer of proof is a condition precedent to having this court pass upon an allegedly erroneous ruling on the exclusion of evidence.

The record does not show that the issue of waiver was ever presented to or urged upon the trial court. Nor does it identify the communications as to which it is now claimed that Mr. Hedges waived his privilege by testifying. In view of these record deficiencies the question is not here for review.

Affirmed.

BIEGELMEIER, C. J., and HANSON and WINANS, JJ., concur.

JONES, Circuit Judge, concurs.

JONES, Circuit Judge, sitting for WOLLMAN, J., disqualified.

RENTTO, Associate Judge, sitting for DOYLE, J., absent.