Alvin A. REHFELD, Plaintiff
and Respondent,

v.

Marilyn M. FLEMMER and Diane L.
Bradford, Defendants and
Appellants.

No. 12104.

Supreme Court of South Dakota.

Argued April 14, 1978.

Decided Sept. 13, 1978.

Lonald L. Gellhaus and Vernon Williams of Williams & Gellhaus, Aberdeen, for plaintiff and respondent.

Thomas M. Tobin of Maynes, Tonner & Maynes, Aberdeen, for defendants and appellants.

DUNN, Justice.

This is an action in equity brought by a father against his two adult daughters seeking the imposition of a constructive trust upon the income from two parcels of farmland, which the plaintiff conveyed by warranty deeds to his daughters. The Circuit Court, Fifth Judicial Circuit, heard the evidence and imposed a constructive trust on the income and the defendants appeal. We affirm.

The plaintiff is a retired farmer who has lived his entire life around Warner, South Dakota. The defendants are his only two children. In the late 1940's he received part of the land in question from his father by a deed but with the verbal understanding that his father would have the income from the farm for the remainder of his life. Pursuant to this arrangement, the plaintiff's father received the income from the land until his death in 1957, a fact which the plaintiff claims his daughters were aware of, but which they deny.

Nona Rehfeld, the plaintiff's first wife and mother of the defendants, died in 1970, and the plaintiff had to pay substantial death and inheritance taxes to inherit the land she held in joint tenancy with him. To prevent this happening on his death, the plaintiff decided to give each of his daugh-

ters a parcel of land as a gift before his death. Diane Bradford, one of the daughters, was a teacher of business and income tax in a Texas high school and admits suggesting it as a way to avoid inheritance taxes. The plaintiff testified that he had an oral agreement with the defendants that he would receive the income from the land for the duration of his life, but the defendants denied this fact.

The plaintiff testified that he was in Texas over the Thanksgiving holiday of 1973 to have surgery on his eyes and at that time had a conversation with his daughter Diane about family affairs. He stated that he informed Diane of his desire to give his daughters some land before he died but that he wanted to keep the income off the land until he died as his father had done. Diane's response was that it was his land to do with as he pleased, and she agreed to let him have the income. The plaintiff returned to South Dakota and had a similar discussion with his other daughter between Thanksgiving and Christmas of 1973. Her response was that if it was all right with Diane, it was all right with her. The daughters denied making any such agreement with their father.

Subsequent to these conversations, the plaintiff visited Robert Miller, an attorney in Aberdeen, who explained the tax consequences of the contemplated transaction and warned the plaintiff against trusting his daughters with such an arrangement. Mr. Miller confirmed at trial that the plaintiff had told him that the arrangement with the daughters was that the plaintiff was to receive the income from the property. The plaintiff expressed faith in his daughters, and Mr. Miller prepared warranty deeds giving them the land as requested by the plaintiff. The deeds granted a fee simple title in the land to the daughters without mentioning any reservation of income.

The plaintiff did, in fact, receive rental payments twice—once in October 1974, and once in April 1975—after conveying the land to his daughters. After this, the defendants demanded that the tenant pay the rental money to them instead of their fa-

ther. The circumstance that precipitated the change was the plaintiff's marriage to his second wife, Ramona, in August of 1974. (The daughters had attempted to cut off the April 1975 rent payment, but their letter to the tenant arrived after the rent had already been paid.) The defendants, especially Diane Bradford, were strongly opposed to the marriage, and the trial transcript is filled with stories of how Ramona beat the plaintiff, destroyed pictures of the daughters and his first wife, and other such things. The plaintiff stated on the stand, however, that he loved his second wife and, in spite of a few fights, wanted to stay with her. After April 1975, the plaintiff no longer received the income from the farmland and has been living, according to his figures, on $350 to $400 per month. He commenced this suit seeking imposition of a constructive trust over the income from the farmland on the basis of unjust enrichment and violation of a confidential relationship on the part of the defendants.

The only other relevant facts are those dealing with the plaintiff's health. Eight years prior to this conveyance, the plaintiff found out that he had glaucoma, which is incurable and has led to his being declared legally blind. Furthermore, he has had chronic kidney problems which began six years prior to the conveyance and have led to removal of one kidney and a large stone remaining in his other kidney.

The trial court made extensive findings of fact and found that the plaintiff's version of the agreement with his daughters was accurate, that he had placed trust and confidence in his daughters and the second marriage was the source of the breach of that trust and confidence by the daughters. The court relied on the fact that the defendants had allowed the plaintiff to receive the income until the second marriage and the fact that Diane Bradford specifically stated on the stand that the arrangement with the father would not have been changed had the plaintiff not remarried. The court found that the plaintiff needed the income, that he had proved the elements of a constructive trust by clear and

convincing evidence and that he was entitled to a constructive trust on the income from the land for life.

The defendants first challenge the sufficiency of the evidence to prove the elements of a constructive trust. They claim that the evidence of an oral agreement and of a confidential relationship is insufficient. It is settled law in this jurisdiction that "one who has received a conveyance of real property, induced by a confidential relationship, and in consideration of a parol promise to hold the property in trust, will be converted into such a constructive trustee if he unjustly repudiates his promise." *Schwartzle v. Dale*, 1952, 74 S.D. 467, 471, 54 N.W.2d 361, 363; *Jaeger v. Sechser*, 1936, 65 S.D. 38, 270 N.W. 531. Since the "presumption of law is that an instrument executed with the formality of a deed or contract deliberately entered into expresses on its face its true intent and purpose * * * [t]o overcome this presumption and establish a trust * * * by parol, the rule that evidence must be clear and convincing applies." *Knock v. Knock*, 1963, 80 S.D. 159, 166–167, 120 N.W.2d 572, 577. On review, the trial court's findings may not be set aside unless they are found to be clearly erroneous, which means that the reviewing court on the entire evidence " 'is left with a definite and firm conviction that a mistake has been committed.' " *Hedges v. Hedges*, 1973, 87 S.D. 425, 430, 209 N.W.2d 660, 663. We are not left with such a conviction.

The existence of an oral agreement is supported by the plaintiff's testimony, the testimony of his attorney, and the fact that the defendants permitted the plaintiff to receive the income from the property and would have continued to do so had the plaintiff not remarried. The promise of a grantee may be inferred from the grantee's silence or from acts of acquiescence at the time of the imposition of the condition and the conveyance. *Pleakas v. Juris*, 1966, 107 N.H. 393, 224 A.2d 74, 78, citing a comment at 29 Fordham L.Rev. 561, 569. See also, Bogert, Trusts and Trustees, (2nd Ed.) § 499. Viewing the evidence

as a whole, we are not convinced that the trial court's determination of the existence of an oral agreement between the father and daughters was clearly erroneous.

The existence of a confidential relationship is a closer question. This court has stated several times that the parent and child relationship of the grantor and grantee is not of itself sufficient to establish a confidential relationship for purposes of a constructive trust. *Jaeger*, supra, at 65 S.D. 43, 270 N.W. 533; *Hedges*, supra, at 87 S.D. 430, 209 N.W.2d 663. We have required a showing of some imbalance in the relationship between the parent and child such as infirmity of the parent or proof that the parent relied on the advice of the children before imposing a constructive trust. The plaintiff in this case was clearly physically infirm at the time of this transaction. He was legally blind and had been suffering from kidney problems which eventually resulted in the removal of one kidney. It is equally clear, however, that the plaintiff had independent counsel and did not rely on his daughters' advice to run his daily affairs. Viewing the evidence as a whole, we believe the plaintiff's physical infirmity, when combined with the fact that the plaintiff expressed great trust in his daughters in spite of his attorney's prophetic advice, is sufficient to sustain the trial court's determination.

Having concluded that the evidence was sufficient to support the imposition of a constructive trust, we now turn to the question of whether equity should refuse to enforce that trust because of the plaintiff's "unclean hands." The defendants contend that the arrangement was an attempt to defraud the United States Government out of inheritance taxes by a sham transaction and, as such, equity should not intervene to enforce such an arrangement. The plaintiff was informed by his attorney that keeping the income from the land could defeat any tax advantage gained from the gift to his daughters. He paid the real estate taxes and received the two rental payments openly and without attempts at secrecy. Any deception of the government

would occur at the time of the plaintiff's death if the executor failed to list the life estate as part of the estate. In weighing the equities of the matter, the proof of the plaintiff's inequitable conduct is not sufficiently strong to justify allowing the daughters to be unjustly enriched, especially in light of Diane Bradford's training in business and tax law.

Having examined the record as a whole, we affirm the trial court's imposition of a constructive trust on the income from the property.

ZASTROW and MORGAN, JJ., concur.

WOLLMAN, C. J., and PORTER, J., dissent.

PORTER, Justice (dissenting).

" 'So reluctant are the courts to ingraft a trust by parol on the legal title to real estate . . . that there is perhaps no better established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence.' " *Knock v. Knock*, 80 S.D. 159, 167, 120 N.W.2d 572, 577 (1963). If we dilute the "clear and convincing" evidence requirement so firmly embedded in our case law, for the sake of a dubiously equitable result, we open the door to future cases where our courts will be asked, as here, to impose a trust on realty to rescue a grantor who belatedly decides to rescind an earlier voluntary absolute conveyance of realty. In this case plaintiff intended that his deeds pass fee title. His motivation came not from pressure from his daughters but instead from his desire to avoid certain inheritance taxes and other expense. He was fully advised by his attorney some time after he had last seen his daughters. Grantor in effect asks that his deeds be reformed because he has now decided that he would prefer to retain an interest in the land notwithstanding the inheritance tax.

The issue is whether the parol evidence offered by grantor is "clear and convincing." This term is well defined in *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965). Essentially, grantor's testimony stands without real corroboration. He cannot provide it by what he may have said to a third person out of the presence of his daughters. The fact that his daughters apparently disliked his spouse, and that the daughters failed to collect the first rent due can be accounted for on other reasonable theories. Even though grantor's health became poor, it seems undisputed that he was fully able to counsel with and understand what his attorney told him. Thus the fact, if it is, that his need for funds increased at a subsequent time is no persuasive proof of an earlier parol agreement.

The "clear and convincing" evidence requirement is extremely important to the rights of all owners of real estate who depend upon their recorded deeds as sufficient proof of title. Enforcement of the requirement would in my view mandate reversal in this case.

I am authorized to state that WOLLMAN, C. J., joins in this dissent.