476 LARSON *v.* DUTIEL *et al.*

v. Hoyne, 14 S. D.—, 84 N. W. 773, barred under Section 4856, Comp. Laws, and the judgment of the circuit court is affirmed.

---

## LARSON v. DUTIEL, *et al.*

Defendant purchased land by paying $440 in cash, and giving a mortgage for $1,060. He borrowed the money from T., to whom he was also indebted for about $600, and executed a second mortgage to T., to secure the entire debt. Defendant afterwards made default, and T. paid the taxes on the land, as well as a portion of the deferred purchase price, and the land was finally conveyed by defendant to T. to prevent a foreclosure; the latter assuming the balance due on the first mortgage, and canceling defendant's notes, without returning them. T. and the agent transacting all the business testified that it was understood that the conveyance was absolute, and defendant testified that he understood that it satisfied the notes. The land was worth much less than the debts asumed and released by T. The defendant was allowed to continue in possesion under agreement to pay the taxes, and T. repeatedly offered to allow him to redeem on the payment of the amount paid by the latter. *Held* sufficient to sustain a finding that the deed was intended as an absolute conveyance, and not as a mortgage.

(Opinion filed May 4, 1901.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action by Peter Larson against Peter A. Dutiel and another to recover real estate. From a judgment in favor of the plaintiff, the defendants appeal. Affirmed.

The facts are stated in the opinion.

*Davis, Lyon & Gates,* for appellants.

If the relation of debtor and creditor in any given case existed in the beginning and the debt still subsists as to the consideration of

the conveyance, the transaction will be treated as a mortgage. 1 Jones on Mortgages, Sec. 258.

A deed absolute upon its face may be shown by parol evidence to be a mortgage, with all the incidents of that instrument. Compiled Laws, Section 4350; Shimerda v. Wohlford, 82 N. W. 393; O'Dell v. Montross, 68 N. Y. 499; Yankton B. & L. Assn. v. Dowling, 74 N. Y. 436; Locke v. Moulton, et al., 30 Pac. 957; Weiseham v. Hocker, 54 Pac. 464; Allen v. Fogg, 66 Ia. 229, 23 N. W. 643.

*Bates & Rogde,* for respondent.

An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee gives a contemporaneous stipulation or agreement binding him to reconvey on being reimbursed within an agreed period an amount equal to the debt with interest thereon. If the conveyance extinguishes the debt, and the parties so intend, so that a plea of payment would bar an action thereon, the transaction will be held an absolute sale. Jones on Mortgages, vol. 1, sec. 267; Rue v. Dale, 107 Ill. 275; Voss v. Eller, 109 Ind. 260; Bridges v. Linder, 60 Iowa 190; Ahern v. McCarthy, 107 Cal. 382; Devero v. Woodruff, 45 N. W. 701, and cases cited in Volume IV Ballard's Annual of Law of Real Property, Secs. 530-531.

If the transaction creates no debt or loan, only a right to repurchase, it is immaterial whether the consideration for reconveyance is fixed at the same price paid for the conveyance or at an advanced price. Jones on Mortgages, Vol. 1, Sec. 275.

FULLER, P. J. This action, between parties claiming land adversely, resulted in a decree adjudging plaintiff to be the owner thereof in fee, and the defendants appeal..

Deeming the greater portion of respondent's additional abstract,

prepared pursuant to rule 13 of this court, to be an essential supplement to the abstract of appellants, we deny the motion of their counsel to eliminate the same. On the merits, the controlling point in the case is whether a certain warranty deed of the premises, executed on the 30th day of December, 1885, by appellants to respondent's grantor, is an absolute conveyance in fee simple, or merely a mortgage given to secure an existing indebtedness. Though controverted in some material particulars by evidence, both positive and circumstantial, the following is a synopsis of the preponderating testimony relied on to sustain the court's finding that the instrument in question is an absolute conveyance and not a mortgage: On the 12th day of August, 1882, Georgiana D. Sanborn, being the owner of the premises in question, sold and conveyed the same to the appellant, Peter A. Dutiel, who in consideration therefor paid $440 in cash, and executed to his grantor a mortgage thereon for the balance of $1,060, the full purchase price being $1,500. Prior to this time Dutiel owed Andrew Tharalson nearly $600, and, in order to make the required cash payment upon the land, he borrowed from Tharalson $440, and, as evidence of the aggregate amount, executed to Tharalson three promissory notes, two of which were for $300 each, and the other for. $429.61, due, respectively, on the 1st day of October, 1883, 1884, and 1885, all bearing interest at the rate of 10 per cent per anuum, and secured by a second mortgage on the land in dispute. All these notes were left for collection with L. D. Henry, a conveyancer, and the agent of Georgiana D. Sanborn, through whom the business of drawing and acknowledging all papers was transacted. Although Dutiel went into possession under his deed, and used a portion of the land, he made complete default in everything that matured prior to the 30th day of December, 1885, including principal, interest, and taxes. Up to this date, Tharalson,

having paid, in order to protect his second mortgage, all taxes assessed against the land, as well as a portion of the debt due Sanborn, as matured purchase money, and having received a notice from Henry that the Sanborn mortgage would be foreclosed immediately unless further payments were promptly made, authorized said Henry to accept for him a warranty deed to the premises from Dutiel in full satisfaction of both mortgages and all money collectible thereunder. Relative to what was done, Mr. Tharalson testified in part as follows: "Q. Before the deed was given did you at any time write to Dutiel with reference to giving any deed at any time? A. No, sir; not directly to Dutiel. No, sir; the matter was in Henry's hands. Q. In 1885 what ocurred? A. That is when the third payment became due. Of course I was called upon again to produce more money. I commenced to feel as though I did not know what to do, and in fact didn,t care to do it any longer, and I so informed Mr. Henry. It appears he had had a talk with Dutiel, and he so informed me that he thought Dutiel was willing to deed over the land to me, providing I would take the land for what I had against the land. I had been informed as to the value of the land. After I got this letter from Mr. Henry, I authorized Mr. Henry to take a deed from Dutiel. Q. What was to be done with the indebtedness? A. It was all to be wiped out, and I should assume the unpaid notes, of course, on the Sanborn mortgage. Q. But your mortgage and the notes— A. Should be wiped out entirely. That was the understanding. * * * Q. Look at the indorsement on the back of the three notes marked "Exhibit C", attached to Henry's deposition, and see who wrote that. A. That is my handwriting. Q. On all three? A. Yes, sir; dated January 9, 1886. That is the date I got that deed from Dutiel. Q. And was these three notes Exhibit C? A. Sent to me at the same time. Q. Did you make

this endorsement on the back of these notes at the time you received this deed? A. Yes, sir; canceled them, in other words." Indorsements on the back of the three notes (Exhibit C, attached to the deposition of L. D. Henry) are offered and received in evidence, which indorsement on the back of each of the said three notes (Exhibit C) is as follows: "Canceled by deed to land in Minnehaha county, January 9, 1886." L. D. Henry, who was at the time acting as the agent of both Sanborn and Tharalson, testified concerning the transaction thus: "As the payments of interest became due as well as the notes, I endeavored to collect from Mr. Dutiel. * * * He often promised to pay them in the future. Failing to collect, I, as agent, reported the fact to Mr. Tharalson. * * * Mr. Tharalson also sent me money to pay the taxes on the premises in question for several years; I think for the years 1882, 1883, 1884, and 1885. * * * About October or November, 1885, there was still due on the Sanborn mortgage somewhere near $700; that is, two notes of $200 each, and one of $260, with interest. * * * About this time Mr. Tharalson wrote to me that , if Mr. Dutiel and wife would sell to him the land in question for what there was against it—that is, the balance due on the Sanborn mortgage, the mortgage due him, plus the amounts he had paid as principal, interest and taxes—he would take the same and assume the Sanborn mortgage, and release them (the Dutiels) from any further liability by reason of any of the mortgages and of the money advanced and paid by him; but, unless the Dutiels were willing to do this, he (Tharalson) would refuse to make any more payments on the Sanborn mortgage. * * * After I consulted with Mr. Dutiel, he agreed to make to Mr. Tharalson a warranty deed to the premises, and he did make such deed, under such conditions as I stated to him. This deed was dated December 30, 1885, signed in my presence by Mr. and

Mrs. Dutiel, and acknowledged before me as notary on the same day; also filed the same day, and recorded in Book H of Deeds, on page 522. The conditions stated to Mr. Dutiel were the same as stated to me by Mr. Tharalson and recited above. The Dutiels have never paid to me, or offered to pay to me, any portion of such taxes or notes.  *  *  *  After recording this deed I sent it to Mr. Tharalson.  *  *  *  To the best of my knowledge and belief there was no talk or agreement between Mr. Dutiel and myself that this deed should be considered as a mortgage, but I fully understood, and am very positive that Mr. and Mrs. Dutiel understood and knew at that time, that the deed was just what it purported to be—a straight warranty deed of conveyance, and not intended in any way to be considered as a mortgage or for security." The following is a part of the testimony of appellant Peter A. Dutiel: "Q. Did you understand after you had given this deed that Mr. Tharalson could have brought suit against you and got judgment against you for this money? A. No; I didn't understand it that way at all. Q. You didn't understand that after you gave him a deed that he could have gone to work and brought suit against you on these notes you gave him? A. I would not have thought he could, but he might, because he didn't give them up. Q. When you gave him this deed you understood he could use the title just to suit himself? A. Yes, of course; he could use the title in his business.  *  *  *  Q. What time were you to pay the amount of these notes after the deed was given? A. No time set. He had ought to have sent them notes to me, but he never did. He said he hadn't sent them to Henry. Q. The bargain was, those notes were to be thrown away? A. Yes; when I made him the deed. Q. How about these Sanborn notes? Were they to be thrown away? A. To be given back to me. Q. Those notes were to be thrown away when you gave him the deed? A. No, sir; I said they were to be given back to me."

It was shown at the trial that, for a valuable consideration
Tharalson sold and conveyed the property to respondent, Larson, in
the year 1894, and, as the authorized agent of Larson, continued to
pay taxes and negotiate concerning the premises. Tharalson's pri-
mary object, from the beginning, seems to have been to assist Dutiel
in every possible way, and the correspondence between them, extend-
ing over many years, tends to sustain the inference that he was anx-
ious to reconvey on receipt of the money expended on Dutiel's ac-
count, which was greatly in excess of the market value of the land.
The fact that Dutiel was permitted to remain upon the land under
an express agreement to pay the annual taxes, and that Tharalson
was entertaining the hope that he might be able to repurchase, when
considered with all the other facts and circumstances, in no manner
tends to support the view that the deed was intended to stand as
security for an existing indebtedness.

According to a well-settled rule, "this court will presume that
the decision of the trial court or referee upon the weight of such ev-
idence is correct, and it is only when this court is satisfied that there
is a clear preponderance of the evidence against such decision that
such presumption will be overcome, and the decision of the trial court
or referee reversed." Randall v. Burk Twp., 4 S. D. 337, 57 N. W.
4; Feldman v. Trumbower, 7 S. D. 408, 64 N. W. 189; Mining Co.
v. White, 10 S. D. 198, 72 N. W. 462. In order to justify a finding
that a deed absolute on its face was given to secure a debt, the proof
must clearly show a mutual understanding on the part of the
grantor and the grantee that the instrument was executed, delivered
an accepted as a mortgage. Tilden v. Streeter, 45 Mich. 533, 8
N. W. 502; Jasper v. Hazen (N. D.), 58 N. W. 454; Rue v. Dole,
107 Ill. 275; Henley v. Hotaling, 41 Cal. 22. Even a deed and con-
temporaneous contract to reconvey must not be construed as a mort-

gage, unless it be shown conclusively that such deed was given as security for the performance of some act or obligation, or for the payment of a debt, and a subsequent proposal to resell to the grantor is no reason why a deed should operate as a mortgage. Smith v. Crosby, 47 Wis. 160, 2 N. W. 104; Gassert v. Bogk (Mont.), 19 Pac. 281, 1 L. R. A. 240; Swarm v. Boggs, 12 Wash. 246, 40 Pac. 941; Ahern v. McCarthy, 107 Cal. 382, 40 Pac. 482. Although the correspondence between the parties after the deed was executed discloses frequent propositions on the part of Tharalson to reconvey to Dutiel, it is evident that the relation of debtor and creditor ceased to exist on and after the execution of the deed, and there was nothing for which such instrument could stand as security. In view of all the facts and circumstances shown, the court was fully justified in its finding that the premises were deeded in satisfaction of the debt, and the judgment appealed from is affirmed.