KNOCK, Appellant in No. 10006, Respondent in No. 10008
v.
KNOCK et al., Respondents in No. 10006, Appellants in No. 10008

(120 N.W.2d 572)

(File Nos. 10006, 10008. Opinion filed March 28, 1963)

**Willy, Pruitt & Matthews,** Sioux Falls, for Dick H. Knock.

**Samuel W. Masten,** Canton, for Henry H. Knock and others.

ROBERTS, J. This is an action brought by plaintiff to set aside a quitclaim deed to the Northeast Quarter of Section 5 and the West Half of Section 4, Township 98, Range 51, Lincoln County. The deed reserving in grantor a life estate was signed May 20, 1957 and recorded September 19, 1957. Defendants are the brothers, sister, nephew and nieces of the plaintiff and are the grantees named in the deed. The amended complaint sets out two causes of action. The first alleges that grantor at the time of the execution of the deed was unable to hear or read or to communicate except by lip reading in the German language and answering by nodding or shaking his head and that defendants taking advantage of his inability induced plaintiff to sign the deed. The second cause of action repeats factual allegations of the first and alleges that plaintiff indicated to the defendants that he want-

ed "to do something with his property so that no one could take it away from him" and did not intend or desire to sign an instrument conveying title to his property. After hearing of testimony the court entered findings and judgment decreeing that defendants hold title to the property in trust for the use and benefit of the plaintiff during his lifetime and that upon his death the property be distributed according to the laws of succession. From the judgment entered plaintiff appeals and defendants feeling aggrieved by the decision of the court have also perfected an appeal.

Plaintiff, his parents, a brother and a sister resided on a farm near Lennox, South Dakota. On December 21, 1948, the father conveyed the northeast quarter of the premises above described referred to in the record as the "home place" to plaintiff and conveyed the northwest quarter thereof to Herman and Anna Knock the aforementioned brother and sister. It is conceded that Herman succeeded to the interest of the sister in this quarter section. Plaintiff and his brother Herman executed wills in which each named the other to inherit his property. When Herman died on May 1, 1957, title to the northwest quarter of the tract in question vested in plaintiff. He acquired title to the remaining quarter section by purchase.

Plaintiff was 55 years of age at the time of the execution of the deed in May, 1957. He was deaf and unable to read, but could lip read in the German language. He conducted a farming operation which was substantial, handled his own business and had a checking account. After the death of his brother Herman plaintiff asked his sister Tillie Klinghagen to contact Carl K. Anderson, an attorney practicing in Canton, who had for many years known and represented the Knocks in various matters. He had prepared the will for Herman which named plaintiff as executor. Mr. Anderson called as a witness by the plaintiff testified that on two separate occasions prior to the signing of the deed plaintiff through Mrs. Klinghagen interpreting consulted with him concerning disposition of his property; that Mrs. Klinghagen said that her brother wished to execute a deed conveying his land to members of his family; that witness explained that plaintiff could leave his property to members of his family either by will or deed; that he advised the plaintiff to reserve a life estate if he executed

a deed; that he did not know whether the interpretation by Mrs. Klinghagen was correct or not; that he could understand plaintiff only when he shook his head yes or no; that defendants to this action with the exception of Mrs. Abbas were present in his office on May 20, 1957, when the deed here in controversy was signed; and that plaintiff named as executor in the will of his brother Herman at that time also signed a petition for probate of the will and later qualified and acted as executor of the estate.

In September 1957, nearly four months after the signing of the deed, Mr. Anderson through Mrs. Klinghagen explained to plaintiff that it was necessary to file a tax return and pay a federal gift tax. Plaintiff thereafter signed a return which the attorney prepared and by check paid the gift tax in the amount of $725.59. Nothing further transpired concerning the transaction of May 20, 1957, until some time in the spring of 1960 when ready to leave the hospital after treatment for an injury plaintiff informed his family that he would be cared for by a Mrs. Tillie Bultena. The evidence tends to sustain the finding of the trial court "that the arrival of Tillie Bultena on the scene caused a change in the close relationship that had existed" between the plaintiff and his family. Mrs. Bultena sought to negotiate a sale of a part of plaintiff's land to her son and after inquiry learned that plaintiff could not convey an absolute title. The present action shortly thereafter was commenced.

No claim is made that plaintiff did not have capacity to dispose of his property and there is no evidence that defendants were guilty of any undue influence, fraud or misrepresentation in the preparation, execution and delivery of the deed. The trial court did not decide the issues generally in favor of either the plaintiff or defendants. The court's views of the equities involved are indicated in his memorandum opinion:

"I am satisfied from the evidence that Carl Anderson explained the deed fully, and the consequences of signing such deed. I am also satisfied that Mrs. Klinghagen faithfully interpreted his words as best she could, but under some handicap because she was translating legal terms which were strange to her from English into

German, which of course then had to be lip read for the most part by the plaintiff. While plaintiff now denies it, I am convinced he knew he was signing some sort of a deed to his property. While he was a deaf mute, he was no moron; he ran his own farm; handled his own business affairs; and took care of his own checking account. However, there is only one request that the plaintiff ever made to his sister, Mrs. Klinghagen, or to the attorney in regard to this property, and I believe the exact nature of this request is most important here. The plaintiff originally requested that he wanted 'to do something with his property so no one could take it away from him.' Mrs. Klinghagen and Mr. Anderson both testified as to this request. They never testified as to any other. The mechanics of carrying out this request was pretty much left to Mrs. Klinghagen and Mr. Anderson, and this deed resulted. * * * Due to the plaintiff's condition, the Court owes a particular duty to seek out his true intent and be governed by it. I am satisfied that the plaintiff had no understanding of a trust and had probably never heard the word, but a fair interpretation of his request would indicate that a trust was what he was seeking. He made no statement that would indicate he wanted to give his property away, and he made no statement that would indicate he wanted to make a testamentary disposition by deed."

■ The burden was on plaintiff seeking to set aside the deed to prove some circumstance such as fraud, undue influence, mistake or mental incapacity to show that the conveyance was not the free act of the grantor. In re Thompson's Estate, 48 S.D. 474, 205 N.W. 47; Davies v. Toms, 75 S.D. 273, 63 N.W.2d 406.

■ We are not in accord with the contention in plaintiff's brief that "the deed was executed through a mistake, and although plaintiff disagrees with the trial Court as to what he thought he was signing, there was, under either version, a mistake, and the effect is the same. That is, the deed is null and void and ineffective. It should be cancelled and set aside. As heretofore stated, it is of no significance whether plaintiff thought he

was signing a paper involving Herman's estate, or thought he was signing some paper relative to his property. The important thing is that he was signing something which he did not agree to, understand, or intend to sign, and which was not authorized by him." Plaintiff operated his own farm and handled his own business affairs and was offered as a competent witness in his own behalf. Though he may have been susceptible because of his physical condition to undue influence we find in the record no evidence of such influence or a disposition to exercise it. Plaintiff was free to make a disposition of his property at his pleasure. Legal advice was sought on his own accord and the testimony of Mr. Anderson, a witness for the plaintiff, is that the effect of the deed was carefully explained through Mrs. Klinghagen interpreting. Plaintiff unquestionably understood as the court found that he was signing a deed to his property. The payment of a substantial gift tax several months after execution of the deed is indicative of an understanding of what transpired. We must conclude that plaintiff has failed to meet the burden of proving facts which would justify cancellation of the deed. The mere fact that he may have changed his mind and attempted to revoke and avoid the effect of his previous valid action would not entitle him to set aside the deed.

The final question is common to both appeals. The court found that plaintiff signed the deed believing it to be a deed wherein he retained all beneficial interest during his lifetime including the right to sell the property on a showing of need and decreed that the defendants hold the title in trust for the plaintiff during his lifetime and the property on the death of the plaintiff be distributed according to the laws of succession. Plaintiff contends that the court should have canceled the deed mistakenly executed and have placed the parties in a status quo position as though no transaction had been had. Defendants, on the other hand, contend that there is no evidence of an intention to create a trust, but if the circumstances indicate such intention then the trust instrument is the deed and should be construed to afford to the plaintiff support during his lifetime even to the extent of a sale of the property if necessary with the residue upon his death going to the defendants named as the beneficiaries in the trust instrument.

■ Trusts are divided into two classes, express and implied. An implied trust is one which is created by operation of law. SDC 59.0101. When the statutes were revised in 1939, those provisions setting forth circumstances that give rise to constructive and resulting trusts were combined in a single section. SDC 59.0102. A court of equity cannot create rights and its jurisdiction over trusts is limited to fiduciary or equitable rights that have come into existence. An implied trust arises from the facts and circumstances of a transaction and this statute by express terms is no obstacle to the granting of remedial relief where it appears that an implied trust exists by reason of circumstances other than those therein enumerated.

■■ A constructive trust is imposed not because of the intention of the parties, but is a remedial device of equity for the restoration of the status quo. It arises when a person owning title to property is under an equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it. In re Farmers State Bank of Amherst, 67 S.D. 51, 289 N.W. 75, 126 A.L.R. 619; In re Zech's Estate, 69 S.D. 51, 6 N.W.2d 432. A resulting trust, like an express trust, is a fiduciary relation and arises in favor of the person who transferred the property or caused it to be transferred under circumstances raising an inference that he intended to transfer to the other a bare legal title and not to convey the beneficial interest. Farmers and Traders Bank v. Kimball Milling Co., 1 S.D. 388, 47 N.W. 402.

■■ An express trust in real property cannot be created by parol. SDC 59.0303; Birchard v. Simons, 59 S.D. 422, 240 N.W. 490. On the other hand, a trust in land created by operation of law may be established by parol evidence. Jaeger v. Sechser, 65 S.D. 38, 270 N.W.531. There being no written evidence of an understanding or promise to hold the property in trust, the inquiry before us is whether there was sufficient other evidence to sustain the finding of an implied trust. Though such a trust in real property may be established by parol, the evidence must be clear and convincing. Jones v. Jones, 67 S.D. 200, 291 N.W. 579; Scott v. Liechti, 70 S.D. 89, 15 N.W.2d 1; Krager v. Waage, 76 S.D. 395, 75 N.W.2d 286; Brown v. Warner, 78 S.D. 647, 107 N.W.2d 1. The presumption of law is that an instru-

ment executed with the formality of a deed or contract deliberately entered into expresses on its face its true intent and purpose. Commercial & Savings Bank v. Cassem, 33 S.D. 294, 145 N.W. 551. A party who seeks to establish the contrary must go beyond the ordinary rule of preponderance. To overcome this presumption and establish a trust or other obligation by parol, the rule that evidence must be clear and convincing applies. Larson v. Dutiel, 14 S.D. 476, 85 N.W. 1006; Jones v. Jones, 20 S.D. 632, 108 N.W. 23; Kjolseth v. Kjolseth, 27 S.D. 80, 129 N.W. 752. The author of an annotation in 23 A.L.R. 1500 on the subject of the degree of parol proof necessary to establish a trust concludes: "So reluctant are the courts to ingraft a trust by parol on the legal title to real estate * * * that there is perhaps no better established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence."

■■■ Plaintiff testified that he signed the deed believing that he was signing a paper involving the probate of his brother's estate. The trial court, however, made contrary findings to the effect that plaintiff knew that he was signing a deed involving his property and there is competent evidence to support these findings. But the court as we have stated made the further finding that plaintiff signed the deed under misapprehension of its legal effect believing that he retained the beneficial interest during his lifetime and decreed that the property described in the deed be held in trust. Plaintiff did not so contend or testify and there is no direct evidence that the deed was not intended as an absolute conveyance. The court found that plaintiff expressed a desire "to do something with his property so that no one could take it away from him". If we assume that this wholly unexplained request bears the implication that plaintiff intended merely to transfer the legal title to defendants while he remained the beneficial owner, it is too vague and indefinite and not the nature of proof required to prove that the transaction resulting in the deed from plaintiff to defendants gave rise to an implied trust.

The judgment is reversed and the cause is remanded with directions to enter a judgment of dismissal.

All the Judges concur.