Beverly J. JOHNSON, Plaintiff
and Appellee,

v.

Raymond D. JOHNSON, Defendant
and Appellant.

No. 13034.

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1980.

Decided Dec. 23, 1980.

Mark E. Swanson, Sioux Falls, for plaintiff and appellee.

Charles L. Dorothy, Dorothy, Craig, Palmer & Harris, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal by Raymond D. Johnson (appellant) from a property division in a judgment of divorce entered on behalf of his ex-wife, Beverly J. Johnson (appellee). Appellant contends on appeal that the trial court erroneously determined that he should receive only $3,000 equity in the parties' marital home, and that the trial court erred in allowing appellee unilateral access to the savings account (containing approximately $35,000) set up by the parties as an informal trust for their children. The balance of the property award is not in dispute. Appellee filed a motion with this Court for appellate attorney fees. We reverse and remand.

## FACTS

Appellant and appellee were married May 4, 1956. Three children were born of this marriage, their ages at the time of this appeal being 23, 21, and 17 years old. The parties were divorced on January 4, 1980. The parties' youngest child has been residing with appellee at the marital home since the divorce. The parties' other two children do not live at home.

The parties purchased a home from appellee's parents in 1959 on a contract for deed for the sum of $13,000. Interest on this contract was 4% per annum with payments of $60 per month for a period in excess of 36 years. There was conflicting testimony at trial as to whether any down payment was made upon the home, although the contract itself indicates that a down payment of $587 was made. Appellee's parents originally purchased the home for immediate resale to the parties, who at that time were unable to obtain mortgage financing. The parties paid approximately $6,000 on the principal of this contract for deed by the time divorce proceedings were instituted. Appraisals disclosed that the value of the home was between $41,900 and $48,000 at the time of trial.

During the parties' marriage, appellant worked as a milkman for a local dairy. He also worked a second job at a service station from 1971–1973. In 1974, appellant's employer went out of business and appellant was forced to operate as an independent milkman because he was unable to find other suitable employment due to injuries received in three separate motor vehicle accidents during the 1960s. These injuries resulted in appellant suffering chronic neck and back problems, including curvature of the spine. Also, appellant underwent surgery in 1970 for an ulcer. In 1974, appellee started working as an interior decorator for Sears and began to earn more money than appellant. Appellee earned approximately 65% of the family's income subsequent to 1975. At this time, appellee began paying the insurance premiums and taxes on the home. Appellant, however, continued to pay the monthly installments on the home itself. During the course of the marriage, appellant and appellee's father built a garage and finished off the basement of the home.

Appellee's mother died in 1978. As a consequence, appellee inherited what remained to be paid on the contract for deed, which was approximately $7,000. Appellant testified at trial that he thought the home was deeded to himself and appellee. Appellee testified, however, that such a deed was never given. Appellee testified that she and appellant were only able to purchase the home because of the generous terms afforded them by her parents. Appellee also inherited a savings account from her mother containing approximately $6,000. She testified that this money was used for funeral expenses and home remodeling.

Prior to her death in 1978, appellee's mother had made a cash gift of approximately $35,000 intended for the parties' three children. The money was placed in a joint savings account under the names of the litigants. It was apparently agreed between the litigants that this account was

set up as an informal trust for their children. In 1978, the interest from this account was reported as income on the parties' joint income tax return. Appellee apparently handled all the business matters for the family. After the divorce proceedings were instituted, this money was unilaterally transferred by appellee to an account solely under her name, without appellant's knowledge or consent. Appellee contends that she did this because she was afraid appellant might withdraw and spend all the money if he had access to it. In 1979, appellee withdrew approximately $3,500 from this account in order to make a down payment on an automobile purchased in her name. According to appellee, this money was borrowed after obtaining permission from the parties' oldest child. Appellee testified at trial that she does not wish to allow the parties' children absolute and inalienable access to the account due to their economic immaturity. In making its division of property, the trial court awarded appellant $3,000 equity in the parties' marital home. Appellee was awarded the marital home itself.

The trial court ruled that each party is required to pay their own costs and attorney fees and that neither party is entitled to alimony. Appellant was ordered to pay $25 per week for child support for the parties' youngest child until the child graduated from high school or became otherwise emancipated.

In conjunction with the division of the marital home, the trial court entered as findings of fact that: (1) the marital home was in the nature of a gift from appellee's parents; (2) since 1959 the parties have paid approximately $6,000 principal on the contract for deed of which appellant is entitled to one-half ($3,000); and (3) appellee is entitled to the home. The trial court further found that the cash gift from appellee's mother to the parties' children was not properly subject to the jurisdiction of the trial court. Hence, the account containing this money remained under appellee's name only.

Appellee, who is 47 years old at the time of this appeal, currently works full-time for Sears earning approximately $12,000 per year. Appellant, who is 51 years old, now resides at his sister's home and pays $60 rent per month. From 1975–1978, appellant averaged approximately $6,400 in yearly income. He testified at trial that he has been advised by his physician that he should not be working due to his physical condition. Appellant continues to work as a part-time independent milkman.

## ISSUES

### I.

Did the trial court abuse its discretion in awarding appellant $3,000 equity in the martial home? We hold that it did.

### II.

Did the trial court err in holding that it did not have jurisdiction to rule upon the disposition of the joint savings account containing the money given to the parties' children by their maternal grandmother? We hold that it did.

### III.

Under the circumstances of this case, is appellee entitled to an award of appellate attorney fees? We hold that she is not.

## DECISION

### I.

Appellant argues that the marital home should be sold and the resulting equity be divided equally among the parties. Here, the trial court determined that $6,000 had been paid on the principal of the contract for deed and, consequently, awarded appellant one-half of that amount. The trial court further determined that the remaining amount owed on the home (approximately $7,000) was inherited by appellee from her mother. The trial court concluded that appellant was not to participate in this inheritance.

Precedent governing this Court's review of a trial court's division of property in a divorce case is as follows:

[W]e start with the general proposition that under SDCL 25–4–44 the trial court has broad discretion in making a division of marital property. This court will not set aside or modify a trial court's decision in this regard unless it clearly appears that the trial court abused its discretion in entering its judgment. *Price v. Price*, 278 N.W.2d 455 (S.D.1979); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979); *Kittelson v. Kittelson*, 272 N.W.2d 86 (S.D. 1978). In making an equitable division of property, a trial court is not bound by any mathematical formula but is to make the award on the basis of the material factors in the case, having due regard for equity and the circumstances of the parties. These factors include the duration of the marriage, the value of the property of each of the parties, the ages of the parties, their health and competency to earn, and the contributions of each of the parties to the accumulation of the marital property. *Kressly v. Kressly*, 77 S.D. 143, 87 N.W.2d 601 (1958). See also *Hansen v. Hansen*, supra; *Lien v. Lien*, supra; *Vaughn v. Vaughn*, 252 N.W.2d 910 (S.D. 1977); *Hanson v. Hanson*, 252 N.W.2d 907 (S.D.1977).

*Michael v. Michael*, 287 N.W.2d 98, 99–100 (S.D.1980) (footnote omitted).

In *Andera v. Andera*, 277 N.W.2d 725 (S.D.1979), we affirmed the trial court's decision not to include 640 acres of realty previously owned by the divorced parties in making a division of property. The 640 acres were purchased by the parties on a contract for deed from appellee's mother. The purchase occurred approximately six months prior to the commencement of the divorce proceedings and was at 25% below the current market value. The couple was engaged in farming. We stated that the transfer of the 640 acres was in the nature of a gift and that "there was no contribution of any significance by appellant in acquiring the land." Id. at 728.

We held in *Busch v. Busch*, 298 N.W.2d 95 (S.D.1980), that the trial court erred in awarding one of the divorced parties full ownership of the marital home. Both parties had worked throughout their eleven-year marriage and had contributed equally to the purchase of the home, which had nearly doubled in value since its purchase.

*Andera*, supra, is distinguishable. Appellant in this case has faithfully made monthly payments on the purchase price of the home for approximately twenty years. For a majority of those years, he also paid the insurance and taxes on the home. Further, he substantially contributed to making major improvements on the home. We cannot agree with the trial court that the marital home was in the nature of a gift from appellee's parents. Payments of $60 per month for nearly two decades cannot be considered an insignificant contribution by appellant. Payments of such a long duration are an investment; in awarding only $3,000 to appellant for his contribution to the home, the trial court effectively negated all inflationary equity appellant had realized in the home during the marriage. We hold that the trial court abused its discretion in its award of $3,000 to appellant and remand this matter for the purpose of selling the marital home and making an equitable distribution of the resulting equity between the parties. There need be no further facts developed by testimony as to the value of the home as those facts were fully developed at trial. However, inasmuch as the trial court did not establish the home's value, this must be done by the testimony at trial in arriving at an equitable division. Failure to place a value upon the property of the parties for purposes of equitable distribution is reversible error. *Guindon v. Guindon*, 256 N.W.2d 894 (S.D. 1977).

## II.

Appellant secondly contends that the trial court erred in allowing appellee unilateral access to the savings account containing the $35,000 given by appellee's mother to the parties for the intended benefit of their children. Appellant is concerned that appellee will eventually deplete the funds of this account for her own purposes.

Our legislature enacted the South Dakota Uniform Gifts to Minors Act by Chapter 208 of the South Dakota Session Laws of 1957, which is now SDCL ch. 55–10. Certain requirements in law were established to include those set forth in SDCL 55–10–5, which provides as follows:

An adult person may, during his lifetime, or by will or trust, make a gift of money to a person who is a minor on the date of the gift, by paying or delivering it to a broker or a domestic financial institution for credit to an account in the name of the donor, another adult or a trust company, followed, in substance, by the words: "as custodian for (name of minor) under the South Dakota Uniform Gifts to Minors Act."

The failure to formally designate a custodian does not affect the consummation of the gift. Here, the money given by the maternal grandmother for the benefit of the children was not accompanied by any formal words of custodial supervision. It was assumed by all of the parties, however, that the money would be kept by appellant and appellee for the children's future benefit. The money was placed in a joint account in appellee's and appellant's names. After the commencement of the divorce proceedings against appellant, appellee unilaterally withdrew all the money from the account (as is permitted under SDCL 51–22–5) and opened another separate account giving herself sole access to the funds. None of the money in question has been distributed to any of the children, although appellee testified that she would not object to placing the money in a formal trust for the children's benefit.

SDCL 25–4–44 states:

Where a divorce is granted for an offense of either husband or wife, the courts shall in such action have full power to make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife. In making such division of the property the court shall have regard for equity and the circumstances of the parties.

SDCL 25–4–45 states:

In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

Both parties in this case testified that the $35,000 in question was to be used for the benefit of their three children. The trial court stated in its findings of fact that the $35,000 was a gift to the children from their maternal grandmother. Appellant and appellee appear to have treated the $35,000 as their own as evidenced by the 1978 joint tax return wherein they declared the interest on the money as income. They intended to distribute the money to the children as they later deemed to be appropriate. We conclude that under the aforementioned statutes, the trial court had the power and duty to protect the interests of these children.

SDCL 55–1–6 states:

An implied trust is one which is created by operation of law. An implied trust arises in the cases described in §§ 55–1–7 and 55–1–10, inclusive.

SDCL 55–1–11 states:

The enumeration in §§ 55–1–7 to 55–1–10, inclusive, of cases wherein an implied trust arises does not exclude or prevent the arising of an implied trust in other cases nor prevent a court of equity from establishing and declaring an implied, resulting, or constructive trust in other cases and instances pursuant to the custom and practice of such courts.

"An implied trust arises from the facts and circumstances of a transaction ...." *Knock v. Knock*, 80 S.D. 159, 166, 120 N.W.2d 572, 576 (1963). A trust by operation of law must be established by clear, satisfactory, and convincing evidence. *Krager v. Waage*, 76 S.D. 395, 79 N.W.2d 286 (1957); *Scott v. Liechti*, 70 S.D. 89, 15 N.W.2d 1 (1944).

We believe that the facts and circumstances of this case, combined with the intent of the parties involved, warrant a creation of a trust with regard to the $35,-

000. We hold that the trial court erred in not assuming jurisdiction of this money under SDCL 25–4–44 and SDCL 25–4–45 in its determination of the parties' divorce property settlement, and we remand the case to the trial court for the purpose of creating a formal trust and designating a proper trust officer with the parties' children as sole beneficiaries, each to receive an equal share of the trust's res upon reaching the age of majority, absent a showing of incompetence. Our ruling will require the immediate payment thereunder of one-third of the trust's res to each of the parties' two oldest children, who have already reached the age of majority. Appellee is required to forthwith return to this trust the $3,500 she withdrew for her personal benefit.

### III.

Subsequent to appellant filing his notice of appeal, appellee moved for an award of attorney fees on appeal in the amount of $3,000. Appellee contends that she cannot afford attorney fees and that appellant is appealing for purposes of harassment. Appellee and two acquaintances of the parties have filed affidavits stating that they have heard appellant express that he is appealing simply to harass appellee. Appellant subsequently filed an affidavit denying all of appellee's allegations and likewise urges that he is economically unable to defray attorney fees.

▮ SDCL 15–17–7 gives this Court the power to order payment of attorney fees in a divorce case, both before and after judgment, provided, however, that such an award is "warranted and necessary." We have addressed this issue in three recent cases: *Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); and *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978). In determining whether one party should be required to pay another party's attorney fees, this Court considers the property owned by each party; their relative incomes; whether the moving party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case. *Lien*, supra.

▮ We have reviewed the circumstances of both parties with these considerations in mind, and determine that appellant is not required to pay appellee's attorney fees on this appeal.

Reversed and remanded.

DUNN and MORGAN, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., concur specially.

FOSHEIM, Justice (concurring specially).

I agree with the majority opinion in all respects except as to the conclusion that the marital home should be sold so that an equitable distribution can be made between the parties. In my opinion, this overreaches the requirements on appeal and invades the province of the trial court. The circuit court may very well conclude that until the youngest child reaches maturity or is otherwise emancipated, the marital home should remain in the possession of appellee, who has custody of the minor. *See Bruggeman v. Bruggeman*, 292 N.W.2d 111 (S.D.1980).

I am hereby authorized to state that WOLLMAN, C. J., joins in this special concurrence.