#25344-a-DG

**2010 SD 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DFA DAIRY FINANCING
SERVICES, L.P.,                                    Plaintiff and Appellant,

    v.

LAWSON SPECIAL TRUST and MINNIE
C. LAWSON, TRUSTEE, DECEASED, and
SCOTT LAWSON, and ANY OTHER HEIRS,
DEVISEES, LEGATEES, EXECUTORS,
ADMINISTRATORS OR CREDITORS and
NOR-TECH DAIRY ADVISORS, INC. and
MIDWEST CONCRETE & REDI-MIX, INC.
f/k/a CORSICA REDI-MIX, INC., and LAKE
PRESTON HEALTHCARE CENTER, INC.,
A Minnesota Corp. d/b/a KINGSBURY MEMORIAL
MANOR, BRULE COUNTY, SOUTH DAKOTA
and ALL PERSONS UNKNOWN WHO HAVE OR
CLAIM TO HAVE ANY INTEREST IN OR ESTATE
IN OR LIEN OR ENCUMBRANCE UPON THE
PREMISES DESCRIBED IN THE COMPLAINT,    Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRUCE V. ANDERSON
Judge

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2010

OPINION FILED **04/21/10**

DAVID D. KNOFF of
Kennedy, Pier & Knoff, LLP
Yankton, South Dakota

Attorneys for plaintiff
and appellant.


CARL J. KOCH
Mitchell, South Dakota

Attorney for defendants
and appellees Lawson
Special Trust.

#25344

GILBERTSON, Chief Justice

[¶1.]        DFA Dairy Financing Services, L.P. (DFA) sued Lawson Special Trust (LST), Minnie Lawson (Minnie), Trustee, deceased, and Scott Lawson (Scott) and all other heirs and beneficiaries of the LST for foreclosure of a mortgage.  DFA entered into the mortgage, which was executed by Minnie as trustee for the LST.  The mortgage was secured by real property owned by the LST.  Scott, as the LST adverse trustee, moved for summary judgment.  The trial court granted his motion.  DFA appeals.  We affirm.

**FACTS**

[¶2.]        On June 10, 1993, Minnie and Irving Lawson (Irving) created the Lawson Family Living Trust (LFLT).  The complicated fifty-six page trust document created several sub-trusts with governing powers and rules specific to each.  One of the sub-trusts created by the LFLT was an irrevocable trust called the Lawson Special Trust (LST).  The LFLT authorized the transfer of real property in Brule County, South Dakota, to the LST.  The LFLT recited an acknowledgement that the transfer of the real property to the LST was in consideration of a commitment by the trustors, Irving and Minnie, to the beneficiaries regarding the ultimate disposition of that real property.  Irving and Minnie were designated as the trustors and trustees of the LFLT and the LST.  They also retained a life estate in the real property.

[¶3.]        Under the terms of the trust document, a surviving trustor had no power of appointment over the real property in the LST.  The trustors, and any surviving trustor, retained only a right to the income from the property in the LST.

#25344

The trust document provided the trustors with the authority to borrow money for any purpose of the trust and to sign notes and grant mortgages. However, those powers were limited specifically by the trust document such that a trustor could not sign notes or grant mortgages against any property in the LST.

[¶4.]     The trust document further provided that upon the death of one of the trustors the LST would be administered by the surviving trustor and an "adverse trustee." Irving and Minnie's son, Scott, was designated as the adverse trustee. According to the trust document, the primary purpose of the adverse trustee was to prevent invasion of the assets of the LST. Violation of any of these provisions gave the beneficiaries of the LST the right to bring an action against the LST for damages.

[¶5.]     Only Scott as the adverse trustee had the power to invade the corpus of the LST. However, no trustee could invade the corpus of the LST for the payment of any debt. Furthermore, the trustors retained the right to gift the property in the LST to a charity, but not for the satisfaction of any debt. In addition, no trustor or trustee could pay any governmental unit with property in the LST. The trust document provided that the trustors could invade the LFLT for support, maintenance, and health reasons, but not the irrevocable sub-trusts including the LST. Furthermore, the trust document provided that no party had the right to force an invasion of the corpus of the LST for any purpose.

[¶6.] Article twenty-two of the LFLT contained a hold harmless provision:

> Any corporation, organization, financial institution, brokerage house, or other entity, which relies, in good faith, upon a representation or action made by any trustee hereunder, or upon the representation made in any certificate of trustee power and authority authorized by Art. XXI, shall be held harmless for any prudent act they do in such reliance.

[¶7.] Irving and Minnie executed a deed dated June 10, 1993, transferring the real property to the LST. That deed was not recorded with the Brule County Office of the Register of Deeds until February 23, 1999, for reasons unknown and not relevant to the issues before this Court. That deed named Scott as one of the co-trustees of the LST along with Irving and Minnie.

[¶8.] Irving was placed in a nursing home sometime after the LFLT trust was created. The cost of Irving's care made it difficult for the family to maintain the farming operation. Irving died in 2001.

[¶9.] On October 8, 2002, Minnie, the surviving trustor, executed a mortgage as trustee for the LST in favor of DFA. Minnie obtained the loan to pay nursing home debts incurred for Irving's care prior to his death and operating expenses for her dairy operation. The mortgage pledged the real property in the LST as security for the payment of a promissory note for $76,429.99. The mortgage was not signed by Scott as the adverse trustee of the LST. Nor did Scott provide any written consent to the mortgage or encumbrance on the real property in the LST for which Minnie secured the loan. DFA executed the mortgage without any title insurance policy or title examination to determine the legal status of the realty.

[¶10.] Minnie passed away without satisfying the mortgage on the real property. On June 15, 2004, DFA filed suit to foreclose on the mortgage due to the

default. Scott answered the complaint, alleging the mortgage was granted in violation of the provisions of the LST prohibiting invasion of the corpus without the consent of the adverse trustee. DFA's answers to interrogatories and request for production stated that it relied upon the declaration of trust as establishing Minnie's power to mortgage the real property. It also stated that it examined a copy of the trust document to determine whether Minnie had the power to encumber the real property.

[¶11.] After the parties completed discovery, Scott moved for summary judgment. Scott claimed that there were no disputed material facts and that he was entitled to judgment as a matter of law as he, as the adverse trustee, had not consented to or signed the DFA mortgage. A hearing was scheduled for January 6, 2009.

[¶12.] One week before the hearing, DFA provided Scott with an unsigned copy of an affidavit from one of its former employees, Anthony Herrick. In that affidavit, Herrick attested that after discussions with Minnie and Scott, he assumed Minnie had the authority to mortgage trust realty. He further stated that he was told that the purpose of the loan was to enable the Lawson dairy farm to continue operating. Herrick's affidavit further stated that Scott and Minnie told him the purpose of the trust was to shield their assets from being recaptured or levied upon by the nursing home for the cost of Irving's care.[1] Herrick attested that he believed Minnie's signature validly encumbered the real property in the LST. He further

---

1.     The issue of the legality of this alleged goal is not before us for resolution.

attested that if Minnie lacked such power, DFA would not have entered into the mortgage.

[¶13.]  At the hearing on Scott's motion for summary judgment, DFA attempted to submit a signed copy of Herrick's affidavit that was identical to the unsigned copy provided to Scott the week prior to the hearing. Scott objected to the affidavit as not timely served. The trial court permitted DFA to submit the signed copy but reserved its ruling as to whether it would be accepted. The trial court eventually ruled the affidavit was not timely submitted and refused it.

[¶14.]  During the hearing, the parties agreed there were no genuine issues of material fact and the issues of law presented were dispositive of the action. The parties further agreed that the validity of the mortgage on the real property was the only issue to be resolved. With that issue resolved, the parties agreed a trial on the foreclosure action would not be required.

[¶15.]  The trial court determined that the LFLT forbade the trustees from invading the corpus of the LST and that only the adverse trustee had such authority. It further determined Scott was named the adverse trustee in the LFLT and was also named as a trustee on the 1993 deed that conveyed the real property to the LST. With regard to the claim of unjust enrichment, the trial court determined there was no benefit conferred upon the beneficiaries of the trust, only on Minnie personally as the mortgage enabled her to satisfy Irving's nursing home debt and continue operating the dairy farm. Finally, the trial court determined that any reasonable person inquiring as to the status of the title to the real property and exercising reasonable diligence would have been on notice that Scott had sole

authority as the adverse trustee to invade the corpus of the LST. The trial court also rejected DFA's argument that it was entitled to other equitable relief and entered an order granting Scott's motion for summary judgment.

[¶16.]    DFA appeals raising the following issues, which we have restated:

1.    Did the trial court abuse its discretion when it refused Herrick's affidavit.

2.    Did the trial court err when it refused to give effect to the hold harmless provision in article twenty-two of the LFLT.

3.    Did the trial court abuse its discretion when it rejected DFA's arguments for equitable relief and granted Scott's motion for summary judgment.

### STANDARD OF REVIEW

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

Discover Bank v. Stanley, 2008 SD 111, ¶16, 757 NW2d 756, 761-62 (quoting Mueller v. Cedar Shore Resort, Inc., 2002 SD 38, ¶10, 643 NW2d 56, 62).

[¶17.]    A trial court's refusal to admit evidence is reviewed under the abuse of discretion standard. Fiechuk v. Wilson Trailer Co., Inc., 2009 SD 62, ¶8, 769 NW2d 843, 846 (citing Steffen v. Schwan's Sales Enter., Inc., 2006 SD 41, ¶19, 713 NW2d 614, 621). "'An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'" Kostel v.

Schwartz, 2008 SD 85, ¶12, 756 NW2d 363, 370 (quoting Kaiser v. Univ. Physicians Clinic, 2006 SD 95, ¶29, 724 NW2d 186, 194). "Trial courts are vested with wide discretion in their evidentiary rulings and this discretion is afforded as well in a court's balancing of unfair prejudice against probative value." Ferebee v. Hobart, 2009 SD 102, ¶12, 776 NW2d 58, 62.

[¶18.]    A trial court's refusal to grant equitable relief is also reviewed under the abuse of discretion standard. Adrian v. McKinnie, 2002 SD 10, ¶9, 639 NW2d 529, 533. "If facts plainly exist to warrant equitable relief and no facts exist to disentitle a party to such relief, then a court is not free simply to ignore the remedy in the name of discretion." *Id*. ¶10. "We will examine the entire record to see whether reasons and facts exist to support or refute the court's discretionary choice." *Id*.

## ANALYSIS AND DECISION

[¶19.]    **1.    Did the trial court abuse its discretion when it refused Herrick's affidavit.**

[¶20.]    DFA argues that justice demands admission of Herrick's affidavit and that it was prejudiced by the trial court's refusal. Scott argues the only purpose of the affidavit was to contradict DFA's previous sworn interrogatories and manufacture an issue of material fact.[2] The trial court refused the affidavit.

---

2.    DFA's answers to interrogatories were as follows:

> Interrogatory No. 10: Upon what document does Plaintiff rely as establishing the power of Minnie Lawson as Trustee of the Lawson Special Trust to mortgage the property sought to be foreclosed?

(continued . . .)

[¶21.]   We have previously expressed our disapproval of eleventh-hour affidavits containing a substantial change in testimony.  Johnson v. Matthew J. Batchelder Co., Inc., 2010 SD 23, ¶12, ___ NW2d ___, ___ (quoting Taggart v. Ford Motor Credit Co., 462 NW2d 493, 503 (SD 1990)).  An issue of material fact will not be created by a party who attempts to change its testimony without an explanation for its change or a showing that its answers were ambiguous and that the new affidavit merely seeks to clarify that testimony.  Id.  The Eighth Circuit aptly stated:

> If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment.  A party should not be allowed to create issues of credibility by contradicting his own earlier testimony.

Taggart, 462 NW2d at 503 (quoting Camfield Tires Inc. v. Michelin Tire Corp., 719 F2d 1361 (8th Cir 1983)).

[¶22.]   We need not address the issue of timeliness, however, because the affidavit's contents were nothing more than conclusionary and could not create a genuine issue of material fact.  In it, the affiant, Herrick, stated he "assumed" that Minnie Lawson had authority to execute the mortgage and "it [was his] belief . . .

---

(. . . continued)
ANSWER:  The Declaration of Trust established Mrs. Lawson as trustee.

Interrogatory No. 11:  Describe the actions taken, including documents reviewed, by Plaintiff or its agent to determine the power of Minnie Lawson, Trustee to mortgage the property now sought to be foreclosed.
ANSWER:   Received a copy of the Trust and interpreted the same.

that a foreclosure and resulting sale of the assets identified in the foreclosure would have occurred" if the mortgage had not been put into place.

[¶23.] The affidavit failed to provide an explanation for the prior inconsistent admission contained in the answers to interrogatories or clarify any perceived ambiguity. In fact, no ambiguity existed in those answers. The affidavit was simply conclusionary and, as such, did not provide a proper basis to contradict, modify, or recant the explicit prior interrogatory admissions. *Cf. Johnson*, 2010 SD 23, ¶13, ___NW2d___, ___ (holding an affidavit containing newly discovered evidence that clarifies previous deposition testimony is admissible).

[¶24.] **2. Did the trial court err when it refused to give effect to the hold harmless provision in article twenty-two of the LFLT.**

[¶25.] DFA argues the trial court erred when it failed to give effect to the hold harmless provision in article twenty-two of the LFLT. DFA claims the hold harmless provision entitled it to rely on Minnie's alleged representation that she had authority to enter into the mortgage and encumber the real property in the LST. DFA relies upon its first argument, that Herrick's affidavit was improperly excluded as support for this argument. That affidavit provided only a statement that Herrick believed Minnie had authority to encumber the real property. Given our previous analysis of the defects in the Herrick affidavit, there is no evidence to support DFA's claim that Minnie had authority to encumber the property. DFA cannot create an issue of material fact with only argument and no contradictory evidence. *See* Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc., 2008 SD 48, ¶37, 754 NW2d 29, 44.

[¶26.]     **3.     Did the trial court abuse its discretion when it rejected DFA's arguments for equitable relief and granted Scott Lawson's motion for summary judgment.**

[¶27.]     DFA argues it is entitled to proceed on its equitable claims against the LST for unjust enrichment, an equitable lien, or an implied or constructive trust. The trial court ruled against DFA on all its equitable claims after determining that there were no genuine issues of material fact and that Scott was entitled to judgment as a matter of law.

*Unjust Enrichment*

[¶28.]     "Unjust enrichment occurs 'when a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying.'" Miller v. Jacobsen, 2006 SD 33, ¶45, 714 NW2d 69, 81 (quoting Juttlestad v. Juttlestad, 1998 SD 121, ¶19, 587 NW2d 447, 451). To prevail on a claim of unjust enrichment against a trust, the party alleging the claim must show that it "conferred a benefit to the trust, that the trust acquiesced to that benefit, and that to allow the trust to retain this benefit without compensation would be unjust." Bollinger v. Eldredge, 524 NW2d 118, 122-23 (SD 1994) (citing Ringgenberg v. Wilmsmeyer, 253 NW2d 197 (SD 1977)). However, "[t]rust property is not subject to the personal obligations of the trustee, even if the trustee becomes insolvent or bankrupt." SDCL 55-1-29.

[¶29.]     In the instant case, DFA did not confer a benefit upon the LFLT or the LST. There was no evidence in the record that the mortgage proceeds were used for the benefit of the trust or the real property held by the trust. Instead, the benefit was to Minnie individually as the funds allowed her to continue her dairy operation

and to Irving's estate as Irving's nursing home bills were paid from the mortgage proceeds. A constructive trust against Minnie's estate might lie, but not one against a trust that was not a party to the mortgage and did not receive any benefit as a consequence of the transaction.

***Equitable Lien***

[¶30.]        DFA cites to CJS Trusts section 471 for the proposition that an equitable lien may be imposed upon trust property when an entity enters into a properly made mortgage "for moneys advanced by them to preserve and permanently improve the property." Assuming arguendo that South Dakota recognizes this cause of action, DFA's argument still fails as there is no evidence in the record that the proceeds from the mortgage were used to benefit or improve the real property. All evidence indicates the proceeds were used to provide cash flow to Minnie's dairy operation and to satisfy Irving's nursing home debts.

[¶31.]        Furthermore, DFA's claim that it properly entered into the mortgage with Minnie as the trustee is negated by the evidence in the record. DFA failed to obtain a title opinion or title insurance. The deed conveying the real property to the trust clearly indicated that Minnie and Scott were trustees and that it was titled in the name of the LST. This gave DFA clear notice that the provisions of the LST applied to the property. *See* SDCL 43-28-15.[3] The trial court found no basis for equitable relief when it reasoned:

_____

3.     SDCL 43-28-15 provides: "The recording and deposit of an instrument, proved and certified according to the provisions of §§ 18-4-17 to 18-4-20, inclusive, and §§ 43-28-8 and 43-28-10, are constructive notice of the

(continued . . .)

> To allow a Plaintiff recovery on these grounds would be tantamount to allowing the bank to take a mortgagor's neighbor's home to satisfy a promissory note when the bank did not exercise due diligence in examining title. Clearly, in that hypothetical, the neighbor was not conferred any benefit when the bank loans the mortgagor money and places the mortgage on the wrong property.

DFA's failure to confirm Minnie had the authority to convey the property as a surviving trustee cannot be described as "properly entering into the mortgage." DFA's failure to protect its interests when it was on notice that the property was subject to the terms of the LST is insufficient to create a question of fact on a claim for equitable relief.

***Implied or Constructive Trust***

[¶32.]     SDCL 55-1-11 provides:

> The enumeration in §§ 55-1-7 to 55-1-10, inclusive, of cases wherein an implied trust arises does not exclude or prevent the arising of an implied trust in other cases nor prevent a court of equity from establishing and declaring an implied, resulting, or constructive trust in other cases and instances pursuant to the custom and practice of such courts.

"'An implied trust arises from the facts and circumstances of a transaction.'" Noll v. Brende, 318 NW2d 319, 320 (SD 1982) (quoting Knock v. Knock, 80 SD 159, 120 NW2d 572, 576 (1963)). "A trust by operation of law must be established by clear, satisfactory, and convincing evidence." *Id.* (quoting Johnson v. Johnson, 300 NW2d 865, 869 (SD 1980)).

---

(. . . continued)
execution of such instrument to all purchasers or encumbrancers subsequent to the recording."

[¶33.] Other than its argument that Herrick's affidavit was improperly excluded, DFA offers no evidence to support its contention that equity demands the imposition of an implied or constructive trust. Without evidence in the record to support the claim of an implied or constructive trust, the trial court did not err in entering summary judgment in favor of Scott on this and all other equitable claims advanced by DFA. There were no genuine issues of material fact, and Scott was entitled to judgment as a matter of law.

[¶34.] Affirmed.

[¶35.] KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.